UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | no. 18-cr-076 |
| | ) | |
| JENNIFER STOCKER, | ) | |
| Defendant. | ) | |
| | | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | no. 20-cr-014 |
| | ) | |
| CATHERINE VERDON, | ) | |
| Defendant. | ) | |

**DEFENDANTS' BRIEFING ON THE ALLEGED VIOLATION AND MOTION TO
DISMISS OR SCHEDULE ADDITIONAL HEARINGS**

Now come Jennifer Stocker and Catherine Verdon, by counsel, and submit this
briefing on the pending violations.  In both cases, the petition alleges that the
defendants failed to make required restitution payments.  Well-established
precedent prohibits revocation of probation for failure to pay court-ordered
restitution where a defendant is unable to pay.  *Bearden v. Georgia*, 461 U.S. 660,
665 (1983).  *Bearden* applies here and absent a showing of a willful refusal to pay or
inadequate bona fide efforts to acquire the money to pay, due process and equal
protection principles prohibit revocation.  Even with a finding of willfulness or
inadequate efforts, those principles prohibit incarceration if other alternatives to
incarceration will satisfy the court's interest in deterrence and punishment.  For the

[1]

reasons stated below, the Court should dismiss the violations or schedule the matter for the additional proceedings needed to develop the record.

## I.      Background & Alleged Violations.

Both defendants pled guilty to violations of 18 U.S.C. § 1001 related to benefits they received from the government.  In both cases, the defendants were sentenced to probation and also ordered to pay restitution.  Ms. Stocker was ordered to pay $139,397.35 to various Vermont entities.  Ms. Verdon was ordered to repay $95,000 to the government through the Clerks Office.  Both defendants' judgments included the following condition which they are alleged to have violated:

> You must make restitution payments in an amount of at least 10% of your gross monthly income until the financial obligation is paid in full. You must notify the court immediately of any material change in your economic circumstances that might affect your ability to pay financial penalties.

The dockets in each case reveal that the defendants in fact made restitution payments to the Court.  In addition, some significant sum has been garnished from Ms. Stocker's tax returns as well as her monthly food stamp (3SquaresVT) assistance.  In each case, however, the defendants have been unable to make payments (since July 2021 for Ms. Stocker and since July 2022 for Ms. Verdon).  In each case, the Probation Office also sought to amend the defendant's conditions to add a treatment requirement.  That condition was added without the benefit of counsel in Ms. Verdon's case and was rejected in Ms. Stocker's case.

## II.   The Fifth Amendment's Due Process Clause and Equal Protection Principles as well as 18 U.S.C. § 3614 Forbid Basing a Violation on a Defendant's Inability to Pay.

Both Ms. Stocker and Ms. Verdon have not made payments because they are unable to pay.  The Supreme Court has made it clear that a court cannot revoke a defendant's probation for failure to pay restitution "absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983).  In *Bearden*, the Supreme Court explained that the prohibition on penalizing defendants solely on account of their indigency was based on both due process and equal protection rationales.  *Id.*  The *Bearden* Court observed that probation can be revoked only if a defendant has "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." *Id*. at 672.  Importantly, a defendant can be imprisoned "[o]nly if alternate measures are not adequate to meet the State's interests in punishment and deterrence." *Id.*  In sum, "*Bearden v. Georgia* recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution." *Black v. Romano*, 471 U.S. 606, 611 (1985).

*Bearden* remains the law of the land and in fact is reflected in 18 U.S.C. §§ 3614(b) and (c), which restate and codify the case's holdings.  As applied to these cases, the Court may not revoke the defendants' probation sentences if the failure to pay restitution was either not willful or the defendants have made adequate efforts to obtain the resources to pay the restitution.  Even if the Court made such a

finding, "the court must consider alternate measures of punishment other than imprisonment." *Bearden*, 461 U.S. at 672.

Such alternate punishments could include extending the time to make payments or community service. *Id.* ("the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine."); *United States v. Johnson*, 347 F.3d 412 (2d Cir. 2003) (suggesting the court could extend the term of probation so as to monitor the situation). Other alternatives include leaving the collection of the restitution to the U.S. Attorney's Financial Litigation Unit, which is specifically tasked with such matters.

### III. The condition the defendants allegedly violated is void for vagueness.

In addition to the due process and equal protection principles that prohibit revocation based on indigency, the condition at issue is vague and leaves too much discretion with the probation officer. The Fifth Amendment's guarantee of due process "requires that a penal statute define a criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010) (internal quotations omitted) (quoting *Skilling v. United States*, 561 U.S. 358, 402-403 (2010)). The requirement that a criminal offense be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited" has been termed the fair warning requirement. The Supreme Court has identified "three related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

[4]

The Supreme Court has identified "three related manifestations of the fair warning requirement." United States v. Lanier, 520 U.S. 259, 266 (1997).

> First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, as a sort of "junior version of the vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

Id. at 266-267 (citations omitted). There are at least two major problems with the condition that counsel in favor of concluding the provision is void for vagueness or that the "junior version" of the doctrine applies and weighs in favor of applying the rule of lenity.

First, the condition is inaccurate insofar as it mandates payments "of at least 10% of your gross monthly income until the financial obligation is paid in full." It does not explain that the Supreme Court has clearly held that the U.S. Constitution prohibits revoking probation based on a defendant's inability to pay.

Second, while "income" has very specific meanings in certain settings such as tax law or accounting, the meaning is undefined here and leaves defendants at a loss to understand whether the condition means "income" as defined by the IRS or something else. Ms. Verdon, for example, does not work and is unable to work and has no income of her own. Yet, she is in revocation proceedings for failing to pay

restitution.  The condition also leaves defendants at a loss to understand whether he or she must make restitution payments out of sources traditionally not considered "income," such as alimony or child support.  For example, Ms. Stocker does work full-time but she has four children she single-handedly supports, thus, she receives food stamps, fuel assistance, and scholarships for after-school programs in addition to her traditional "income."  Likewise, Ms. Verdon receives a monthly adoption subsidy from New Jersey.  The condition does not explain whether these non-traditional sources of money are "income" within the meaning of the condition.

In a similar vein, the condition does not explain what a defendant is to do when he or she is financially dependent on an estranged spouse.  In such a situation, the estranged spouse's income may still be imputed to the defendant for some purposes even if the defendant has no access to the money.  Both Ms. Stocker and Ms. Verdon are affected by this situation to a greater or lesser degree.

The same deficiencies that make the provision vague also leave too much to the supervising probation officer's discretion to determine whether and how much a defendant should have to pay.  *United States v. Boles*, 914 F.3d 95, 112 (2d Cir. 2019); *United States v. Peterson*, 248 F.3d 79, 86 (2d Cir. 2001) (per curiam).

### IV.    The Court has repeatedly found the defendants to be indigent and the great weight of evidence shows the defendants are unable to pay.

Here, the defendants were both found to be indigent in their underlying federal cases and in the current revocation proceedings.  The great weight of the evidence reflected in the PSRs adopted by the Court and elsewhere makes it clear that the failure to pay is not willful.

[6]

With respect to Ms. Verdon, for example, it is undisputed that she is not employed and is in fact disabled as a result of her car crash. PSR at ¶¶65-71. Other than the adoption subsidy from New Jersey, she is financially dependent on her estranged husband and, before her son stopped working, her adult son. She has no "income" that is her own. For example, the monthly payment from the State of New Jersey is for caring for her niece. The PSR reflects exactly this and lists only that monthly subsidy and the money her estranged husband earns as her "monthly income." That is to say, other than the subsidy, there are no other funds over which she has exclusive control.

Moreover, the PSR shows at ¶84 some $440,000 in judgments, liens, or tax warrants that *predate* the restitution order. Ms. Verdon is not paying the restitution because she literally cannot pay the restitution. In fact, for more than a year—from April 8, 2021 to July 14, 2022—she did make payments (totaling $1600). But this was before she separated from her husband. This fact alone makes it clear that when Ms. Verdon had "income," she paid restitution. Further, the fact that the government's Financial Litigation Unit has not pursued Ms. Verdon also indicates that she is unable to pay.

For Ms. Stocker, although she is now employed in a nine-to-five job and no longer involved in any of her previous businesses, she now supports four children on her own with no assistance from the children's father. Now, she legitimately qualifies for many of the government subsidies and assistance programs that she is convicted of defrauding in her underlying offense conduct. Indeed, even at the time

[7]

of sentencing, her "Net Worth" was listed as -$3,500 and her "Net Monthly Cash Flow" was listed as -$ 12,510.50.  ¶61.  That is to say, she did not have an ability to pay restitution at sentencing, *see* PSR ¶64 (concluding she had an inability to pay a fine), and although she did make payments during periods of her supervision when she was able, she is no better off now than she was at sentencing.

Thus, Ms. Stocker also is not paying the restitution because she literally cannot afford to pay the restitution.  Prior to separating from her husband, she was able to make payments as evidenced by the payments she made prior to July 2021. But this was before she separated from her husband.  This fact alone makes it clear that when Ms. Stocker had an ability to pay, she paid restitution.  Further, the fact that the government's Financial Litigation Unit has also not pursued Ms. Stocker also indicates that she, similarly to Ms. Verdon, is unable to pay.

## CONCLUSION

For the reasons stated above, the Court should dismiss the violation or schedule the matter for additional hearings needed to develop the factual record.

March 7, 2023.                          MICHAEL L. DESAUTELS
                                        Federal Public Defender

                                   By:  */s/ Sara M. Puls*
                                        Sara M. Puls
                                        Assistant Federal Public Defenders

                                        Office of the Federal Public Defender
                                        District of Vermont
                                        95 Pine Street, Suite 150
                                        Burlington, Vermont 05401
                                        (802) 862-6990
                                        Counsel for Jennifer Stocker

[8]

By:   */s/ Barclay T. Johnson*
      Barclay T. Johnson
      Assistant Federal Public Defenders

      Office of the Federal Public Defender
      District of Vermont
      95 Pine Street, Suite 150
      Burlington, Vermont 05401
      (802) 862-6990
      Counsel for Catherine Verdon